## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GLOBAL ONE FINANCIAL, INC.,           :
a Georgia corporation,                :
                                      :
Plaintiff,                            :
                                      :        Civil Action
v.                                    :
                                      :        File No.: _____
CDA WEALTH CONSULTING, LLC,           :
a California limited liability company, :
CHET D. ADKINS, and SHEIK KHAN,       :
                                      :
Defendants.                           :
_____:

## COMPLAINT FOR DAMAGES AND OTHER RELIEF

**COMES NOW** GLOBAL ONE FINANCIAL, INC., by and through its

undersigned counsel of record, and for their Complaint for Damages and Other Relief,

aver the following:

### PARTIES, JURISDICTION & VENUE

#### 1.

Plaintiff GLOBAL ONE FINANCIAL, INC. ("Global One" or "Plaintiff") is a

corporation constituted and existing under the laws of the state of Georgia, having its

principal place of business at 1200 Ashwood Parkway, Suite 150, Atlanta, DeKalb

County, Georgia, 30338.

2.

Defendant CDA WEALTH CONSULTING, LLC ("CDA") is a limited liability company previously constituted and existing under the laws of the state of Nevada.  According to CDA's website, its principal place of business is allegedly located at 2888 Locker Avenue East, Suite 101, San Diego, California 92010. However, upon information and belief, CDA is operating its business at 2893 Woodridge Circle, Carlsbad, California 92008.  CDA may be served with summons and complaint upon its Manager, CHET D. ADKINS or any other officer, managing or general agent, or other agent authorized by appointment or law to receive service of process, at either of the above addresses. Defendant CDA is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91(1) through (3).

3.

Defendant CHET D. ADKINS ("Adkins," or collectively with CDA and Sheik Khan, "Defendants") is a resident of the state of California, having his primary residence at 2893 Woodridge Circle, Carlsbad, California 92008, and may be served with summons and complaint at this address. Defendant Adkins is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91(1) through (3).

4.

Defendant SHEIK KHAN ("Khan," or collectively with CDA and Adkins,

"Defendants") is a resident of the state of California, having her primary residence at 36010 Meriwether Way, Murrieta, California 92562, and may be served with summons and complaint at this address. Defendant Khan is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91(1) through (3).

5.

This action arises under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. This Court has federal question jurisdiction over the matter pursuant to 28 U.S.C. § 1331. Supplemental jurisdiction over Plaintiff's state law claims exists in accordance with 28 U.S.C. § 1367.

6.

Moreover, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 in that Plaintiff does not share common citizenship with any Defendant and the amount in controversy exceeds $75,000.00.

7.

This Court has jurisdiction over the persons of Defendants and venue is proper in this District pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 in that this District is the situs of where a substantial part of the events and/or omissions giving rise to the claims enumerated hereinbelow occurred.

### FACTS COMMON TO ALL COUNTS

8.

Defendant CDA is an independent private financial services firm that offers financial planning services to both individuals and small businesses.  At all relevant times herein, Defendants Adkins and Khan were employed by or otherwise affiliated with CDA as licensed insurance producers and were appointed by American General Life Insurance Company to sell its insurance products.

9.

On November 3, 2010, Adkins and Khan, as authorized representatives of CDA, sought financing from Plaintiff to facilitate their acquisition of a universal life insurance policy from American General Life Insurance Company ("AG") on the life of Adkins for the benefit of Khan, bearing policy number L9E00045 (the "Policy").  Khan was not only a beneficiary to the Policy, but also the writing agent for the Policy (i.e. Khan sold the Policy to Adkins and received a 70% commission on same.)  A true and genuine copy of the Policy, including Application for same, is attached hereto as Exhibit "A" and incorporated herein by reference.

10.

Based upon and in reliance on the financial information and representations provided by Defendants to Plaintiff, on January 14, 2011, Plaintiff issued a letter of commitment (the "Commitment Letter") to Adkins and CDA, providing that

Plaintiff would advance certain amounts directly to AG to facilitate the purchase of the Policy pursuant to a promissory note and security agreement between CDA and Plaintiff. A true and genuine copy of the Commitment Letter is attached hereto as Exhibit "B" and incorporated herein by reference.

11.

In accordance with the Commitment Letter, on or about January 17, 2011, CDA, by and through its Manager, Adkins, duly executed a Promissory Note and Security Agreement (the "Note") in the principal amount of Two Hundred Fifty Thousand Dollars ($250,000.00) in favor of Plaintiff. A true and genuine copy of the Note is attached hereto as Exhibit "C" and incorporated herein by reference.

12.

Per the express terms of the Note, CDA was required to pledge its accounts receivable as partial collateral for the Note. Additionally, Adkins executed a Collateral Assignment of Life Insurance (the "Collateral Assignment") as further security for the Note. A true and genuine copy of the Collateral Assignment is attached hereto as Exhibit "D" and is incorporated herein by reference.

13.

In the Collateral Assignment, Adkins warranted, covenanted, and agreed that (1) Plaintiff would have sole power to collect the surrender value of the Policy, (2) checks payable under the Policy would be drawn only to the order of Plaintiff, (3)

Adkins would keep the Policy free of all claims, liens, security interests and encumbrances other than those in favor of Plaintiff, and (4) Adkins would hold in trust for Plaintiff all payments received in connection with the Policy or from disposition of the Policy.

14.

These warranties, covenants, agreements, and statements were false and fraudulent when made, as Adkins demonstrated through his conduct that he never intended to honor them. To the contrary, as shown by Defendants' conduct in (1) failing to pay as called for in the Note, coupled with (2) surrendering the Policy via false and fraudulent surrender documents, Defendants intended from the beginning to induce Plaintiff to make the $250,000.00 advance, then "cash in" the Policy. Simply put, CDA and Adkins never intended to honor those promises and obligations. Instead, CDA and Adkins, with Khan's assistance, intended, from the beginning, to sign whatever they had to sign in order to obtain the $250,000.00 advance and the Policy, then improperly usurp Plaintiff's security interest and take the cash value of the Policy without paying for it.

15.

As further security for the Note, on or about January 17, 2011, Adkins, on behalf of CDA, executed an Authorization Agreement for Direct Debits that authorized Plaintiff, or its designees and assignees, to make debits directly from CDA's

designated bank account (the "ACH Authorization"). The ACH Authorization was irrevocable.

16.

In furtherance to Adkins' application for the Policy and CDA's application for the Note, Adkins, individually and as a representative of CDA, specifically represented, warranted, and acknowledged a complete understanding of the terms of the Note, the terms of the Policy, and all related documentation incident to these contracts, by way of that certain Disclosure Statement, which was signed by Adkins and dated January 17, 2011. A true and genuine copy of the Disclosure Statement is attached hereto as Exhibit "E" and incorporated herein by reference.

17.

In furtherance of Adkins' application for the Policy and CDA's application for the Note, Adkins further acknowledged his complete understanding of the terms and conditions of each referenced obligation by way of that certain Acknowledgement ("Acknowledgment"), which was signed by Adkins and dated January 17, 2011. A true and genuine copy of the Acknowledgement is attached hereto as Exhibit "F" and incorporated herein by reference.

18.

Adkins, individually and as a duly authorized representative of CDA, reviewed and executed all of the documents and paperwork associated with CDA's

application for the Note and Adkins' application for the Policy.  In accordance with these documents, Adkins clearly and unequivocally agreed to seek independent tax and legal professional advice before executing any of the documents incident to the application process for the Note and the Policy.  Specifically, Adkins acknowledged, "The corporation and I have been advised that we should seek tax, legal, and accounting advice regarding the Program from our own advisors.  I acknowledge that we have either sought such advice or have decided (at our own risk) not to do so." See Exhibit "E", section (k).

19.

In accordance with the Note, Plaintiff agreed to make five (5) advances of $50,000.00 each (each an "Advance and together the "Advances").  The Advances were to be paid directly to AG to fund premiums on the Policy.  Plaintiff effectuated the first Advance to AG on February 10, 2011, and the second (and ultimately final due to CDA's default) Advance on February 3, 2012.  Plaintiff made these Advances in reliance on CDA's and Adkins' promises and representations, alleged to be false and fraudulent, made in the Note, Collateral Assignment, and other documents cited herein.

20.

CDA made an initial interest payment at the time of the first Advance, and was obligated under the terms of the Note to make monthly interest payments

commencing on January 17, 2011, and on the first day of each month thereafter. Defendants knew that the Advances and the agent commission on the Policy would not be made if that initial interest payment was not made, so Adkins and CDA made that initial payment for the sole purpose of inducing Plaintiff to make the initial Advance to AG. As a result, CDA and Adkins obtained the Policy and Khan collected a sizable commission.

21.

At the time of the initial transaction and thereafter, Adkins and CDA had no intention of making all of the remaining payments called for in the Note, and specifically intended <u>NOT</u> to make those payments, and instead intended to maintain the loan just long enough to build up sufficient cash value in the Policy before surrendering the Policy and converting the proceeds (to Global One's detriment) without having paying anything more than the initial payment and a few minimal payments thereafter.

22.

Under the terms of the Note, the entire principal amount of the Note was to become due and payable on the Maturity Date of January 16, 2021, but, pursuant to the terms of the Note, could be called or otherwise become due and payable sooner, e.g., the Note would become immediately due and payable in the event of cancellation or default.

23.

On or about January 9, 2013, Plaintiff received a facsimile from Adkins dated December 11, 2012, requesting that Plaintiff cancel CDA's loan and surrender the Policy (the "Loan Cancellation Request"). A true and genuine copy of Adkins December 11, 2012, correspondence is attached hereto as Exhibit "G" and is incorporated herein by reference.

24.

That same day Plaintiff responded to Adkins correspondence via email, confirming receipt of his Loan Cancellation Request and advising as to the documentation and fees required by Plaintiff to process the surrender of the Policy and cancel the loan. A true and genuine copy of Plaintiff's January 9, 2013, correspondence is attached hereto as Exhibit "H" and is incorporated herein by reference.

25.

Thereafter, Defendants engaged in multiple communications with Plaintiff, via telephone and electronic mail, in which Defendants affirmed the transaction and an understanding of the import of the terms of the Collateral Assignment. Defendants further requested that Plaintiff delay Defendants' request to surrender the Policy until after January 17, 2013. Although Plaintiff acceded to this request, the requested documents were never provided nor the requisite fees remitted. True

and genuine copies of the Parties' email correspondence are attached hereto as Exhibits "I", "J", "K", "L", "M" and "N", and are incorporated herein by reference.

26.

On or about February 6, 2013, Global One issued a Default Notice to Adkins and CDA advising CDA that it was in default of its obligations under the Note, by reason of its failure to make payments coming due and owing on February 1, 2013 (the "First Default Notice"). A true and genuine copy of the Default Notice is attached hereto as Exhibit "O" and incorporated herein by reference. Specifically, Plaintiff's efforts to secure payment by Direct Debit pursuant to the ACH Authorization were rejected due to Defendants' improper placement of "Stop Pay" on CDA's designated bank account. As a result, Plaintiff declared the entire outstanding principal and all unpaid interest, as well as other contractual costs and fees due under the Note.

27.

Defendants CDA and Adkins failed to remedy their default and on February 13, 2013, Plaintiff issued a second and final notification of default (the "Final Default Notice"), which notified said Defendants of their continued default and advised that Plaintiff was moving to surrender the Policy in exchange for payment of the cash surrender value. A true and genuine copy of the Second Default Notice is attached hereto as Exhibit "P" and incorporated herein by reference.

28.

Each of the First Default Notice and the Final Default Notice further advised Defendants CDA and Adkins that pursuant to Section 3(b)(ii) of the Note, a prepayment fee would be assessed against CDA for certain early payoffs and prepayments. (Ex. B at section 3(b)). Specifically, foreclosure on and surrender of the Policy and application of the resulting proceeds of same to the outstanding principal due on the loan constitutes an early payoff and prepayment of the Note. The prepayment fee to be assessed against CDA pursuant to the terms of the Note is $7,500.00.

29.

Despite the numerous representations made by Defendants in their communications with Plaintiff, including those set forth in the preceding paragraphs, and wholly unbeknownst to Plaintiff at the time, on or about February 19, 2013, Plaintiff learned that Defendants CDA and Adkins, with the assistance and direction of Defendant Khan, had already improperly and fraudulently effectuated the surrender of the Policy on January 14, 2013, without Plaintiff's knowledge or consent and converted the proceeds therefrom for Defendants' benefit. This was accomplished by means of Defendants submitting a false and fraudulently executed Policy Cancellation and Disbursement Request Form to AG seeking payment of $103,000.00, representing the total value of the Policy proceeds. A true and genuine

copy of the Policy Cancellation and Disbursement Request Form is attached hereto as Exhibit "Q" and incorporated herein by reference.  Plaintiff would later learn that Defendants were engaged in a deliberate and systematic pattern of fraud and deceit designed to defraud Plaintiff by misappropriating the Policy proceeds to Plaintiff's ultimate detriment.

30.

On or about January 29, 2013, AG delivered the loan proceeds from the Policy to Adkins in the amount of $103,000.00 in furtherance of Defendants' improper and fraudulent surrender request, and upon information and belief, Defendants have converted the proceeds for their personal use and benefit to the detriment of Plaintiff.

31.

The terms of the Collateral Assignment executed by Defendant Adkins, as well as Adkins' and Khan's verbal and written communications with Plaintiff, clearly manifest that Defendants were not permitted to initiate or collect a withdrawal from the Policy without Plaintiff's consent (which it did not provide) until all liabilities under the Note are satisfied in full, which to date remain unsatisfied.

32.

With the luxury of hindsight, Plaintiff now contends that Defendants' singular and collective requests and representations were false and made with the intent to

defraud Plaintiff by converting the proceeds of the Policy to their personal use and benefit.

33.

There is no question that Defendants knew that they were not entitled to the proceeds of the Policy and that same were the property of Plaintiff.

34.

Defendant Khan was an active, knowing, and willing participant in the scheme to defraud Plaintiff of the Policy proceeds described herein.

35.

Since learning of Defendants' fraudulent scheme and the conversion of the Policy proceeds, Plaintiff has been in regular communication with AG concerning AG's role in processing the fraudulent Policy surrender documents. Upon information and belief, Defendants have represented to AG that the converted Policy proceeds had been returned or would be returned to AG.  As of the filing of this Complaint, Defendants have failed to turn over such Policy proceeds.

36.

Despite Plaintiff's best efforts to mitigate its damages, it nonetheless remain damaged as a result of Defendants' tortious and fraudulent conduct.

**COUNT I - - ALL DEFENDANTS**
**VIOLATION OF FEDERAL RICO ACT (18 U.S.C. § 1962(C))**

37.

Plaintiff incorporates and realleges paragraphs 1 through 36 of this Complaint as though the same were fully set forth herein.

38.

Each named Defendant is a "person" within the meaning of 18 U.S.C. § 1961(3).

39.

Some or all of Defendants and other individuals or affiliates acting in concert with them, or otherwise associated with them, (collectively the "Co-Conspirators"), constitute an associated-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4).

40.

These enterprises have engaged in, and their activities have affected, interstate commerce.

41.

Upon information and belief, from approximately November 2012 through February 2013, and possibly longer, through the use of the United States mail and wires, some or all of the Co-Conspirators have participated in a scheme or artifice to defraud Plaintiff by means of false pretenses or representations and through the

concealment of material facts. Some or all of the Co-Conspirators have committed separate and repeated acts of mail fraud under U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343, constituting predicate acts under 18 U.S.C. § 1961.

42.

At all times relevant hereto, some or all of the Co-Conspirators knowingly, willfully, and intentionally participated, directly or indirectly, in the conduct of the affairs of the enterprises through a pattern of racketeering activity, as more particularly described above, in violation of 18 U.S.C. § 1962(c).

43.

The incidents of racketeering activity referred to above were neither isolated nor sporadic events, but rather involved systematic, repeated, and continuing violations of the law. The acts of racketeering activity are connected by common participants, common victims, common methods of commissions, and common results and purposes, and therefore, constitute a pattern of criminal activity.

44.

As a result of these violations of 18 U.S.C. § 1962(c), Plaintiff has suffered actual, existing, and future damage and injury for which Defendants are jointly and severally liable in such amounts as may be determined at trial.

45.

Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover its actual

16

damages and its costs of litigation, including reasonable attorney's fees, as a result of the above-described violations of 18 U.S.C. § 1962(c).

**COUNT II - - ALL DEFENDANTS**
**VIOLATIONS OF FEDERAL RICO ACT (18 U.S.C. § 1962(D))**

46.

Plaintiff incorporates and realleges Paragraphs 1 through 45 of this Complaint as though the same were fully set forth herein.

47.

From approximately November 2012 through February 2013, and possibly longer, in violation of 18 U.S.C. § 1962(d), some or all of the Co-Conspirators knowingly and willfully combined and conspired with and among each other to violate the provisions of 18 U.S.C. § 1962(c), that is, to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

48.

By reason of this violation of 18 U.S.C. § 1962(d), Plaintiff has suffered actual, existing, and future damage and injury for which Defendants are jointly and severally liable in such amounts as may be proven at trial.

49.

Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover its actual damages and its costs of litigation, including reasonable attorney's fees, as a result

of the above-described violations of 18 U.S.C. § 1962(d).

## COUNT III - - ALL DEFENDANTS
### VIOLATIONS OF GEORGIA RICO ACT (O.C.G.A. § 16-14-4(B))

50.

Plaintiff incorporates and realleges Paragraphs 1 through 49 of this Complaint as though the same were fully set forth herein.

51.

Some or all of the Co-Conspirators and various sub-groups thereof constitute an association-in-fact enterprise within the meaning of O.C.G.A. § 16-14-3(6).

52.

Through the use of the United States mail and wires, some or all of the Co-Conspirators have participated directly or indirectly in a scheme to defraud Plaintiff by means of false pretenses or representations and through the concealment of material facts. These separate and repeated acts of mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343 are predicate acts under O.C.G.A. § 16-14-3(9).

53.

At all times relevant hereto, some or all of the Co-Conspirators were associated with the above-described enterprises, and knowingly, willfully, and intentionally participated, directly or indirectly, in the conduct of the affairs of the enterprises through a pattern of criminal activity, in violation of O.C.G.A. § 16-14-

4(b).

54.

The incidents of criminal activity referred to above were neither isolated nor sporadic events, but rather separate and interrelated acts forming a systematic and ongoing pattern, which some or all of the Co-Conspirators concealed from Plaintiff.

55.

As a result of these violations of O.C.G.A. § 16-14-4(b), Plaintiff has suffered actual, existing, and future damage and injury for which Defendants are jointly and severally liable in such amounts as may be determined at trial.

56.

Pursuant to O.C.G.A. § 16-14-6(c), Plaintiff is entitled to an award of treble damages, that being three (3) times its actual damages, punitive damages, and its costs of investigation and litigation, including reasonable attorney's fees, as a result of the above-described violations of O.C.G.A. § 16-14-4(b).

**COUNT IV - - ALL DEFENDANTS**
**VIOLATIONS OF GEORGIA RICO ACT (O.C.G.A. § 16-14-4(C))**

57.

Plaintiff incorporates and realleges Paragraphs 1 through 56 of this Complaint as though the same were fully set forth herein.

58.

From about November 2012 through February 2013, and possibly longer, in

19

violation of O.C.G.A. § 16-14-4(c), some or all of the Co-Conspirators knowingly and willfully combined and conspired with and among one another to violate the provisions of O.C.G.A. § 16-14-4(b), that is, to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises through a pattern of racketeering activity.

59.

As a result of these violations of O.C.G.A. § 16-14-4(c), Plaintiff has suffered actual, existing, and future damage and injury for which Defendants are jointly and severally liable in such amounts as may be determined at trial.

60.

Pursuant to O.C.G.A. § 16-14-6(c), Plaintiff is entitled to an award of treble damages, that being three (3) times its actual damages, punitive damages, and its costs of investigation and litigation, including reasonable attorney's fees, as a result of the above-described violations of O.C.G.A. § 16-14-4(c).

**COUNT V - - DEFENDANTS CDA AND ADKINS**
**BREACH OF CONTRACT**

61.

Plaintiff incorporates and realleges Paragraphs 1 through 60 of this Complaint as though the same were fully set forth herein.

62.

CDA is a party to the Note, and in accordance therewith, owes certain

enumerated contractual duties to Global One. Adkins is a party to the Collateral Assignment, and in accordance therewith, owes certain enumerated contractual duties to Global One, including accepting responsibility for any deficiencies of CDA pursuant to a default under the Note.

63.

As further delineated hereinabove, CDA and Adkins have breached their contractual duties to Global One by failing and refusing to honor obligations to Global One pursuant to the Note and the Collateral Assignment. Under the terms of the Note and the Collateral Assignment, Defendants are in default of the same.

64.

As a direct and proximate result of Defendants' contractual breaches enumerated herein, Global One has been damaged in an amount to be determined at trial.

**COUNT VI - - ALL DEFENDANTS**
**CONTRACTUAL AND STATUTORY CLAIMS FOR**
**ATTORNEY'S FEES AND EXPENSES OF LITIGATION**

65.

Plaintiff incorporates and realleges Paragraphs 1 through 64 of this Complaint as though the same were fully set forth herein.

66.

Under the terms of the Note and the Collateral Assignment, Defendants CDA

21

and Adkins are in default under the terms of the Note and the Collateral Assignment, and said Defendants are therefore liable for all of Global One's reasonable attorney's fees and costs incurred in collecting liabilities thereunder pursuant to the express terms and conditions of those contractual documents.

67.

Furthermore, the steadfast refusal to pay Global One the sums clearly owed pursuant to the Note and the Collateral Assignment, as well as Defendants' fraudulent and willful misconduct outlined herein, demonstrates bad faith and stubborn litigiousness, and has caused Global One unnecessary trouble and the expense of filing this lawsuit, and Global One is entitled to recover from Defendants its expenses of litigation, and reasonable attorney's fees pursuant to O.C.G.A. §§13-6-11 and 9-15-14.

### COUNT VII - - ALL DEFENDANTS
### CONVERSION

68.

Plaintiff incorporates and realleges Paragraphs 1 through 67 of this Complaint as though the same were fully set forth herein.

69.

Each of Defendants, with an actual knowledge and understanding of the Collateral Assignment nonetheless engaged in a pattern of fraud and deceit designed to deprive Plaintiff of the Policy proceeds. By executing and submitting a false and fraudulent Policy Cancellation and Disbursement Request Form to AG with

Plaintiff's consent, and by negotiating the check issued from AG, Defendants have converted funds and property belonging to Plaintiff.

70.

As a result of Defendants' conversion of Plaintiff's property, Plaintiff has been damaged and is entitled to recover from Defendants such amounts as may be proven at trial.

## COUNT VIII - - DEFENDANTS CDA AND ADKINS
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

71.

Plaintiff incorporates and realleges Paragraphs 1 through 70 of this Complaint as though the same were fully set forth herein.

72.

As party to a contract, Defendants CDA and Adkins owed Plaintiff a duty of good faith and fair dealing.

73.

Said Defendants' actions and omissions described above constitute a breach of the duties of good faith and fair dealing embodied in every Georgia contract.

74.

Said Defendants are liable to Plaintiff for breach of the aforementioned duties in an amount to be determined by the enlightened conscience of an impartial jury.

## COUNT IX - - DEFENDANTS CDA AND ADKINS
### BAD FAITH BREACH OF CONTRACT

75.

Plaintiff incorporates and realleges Paragraphs 1 through 74 of this Complaint as though the same were fully set forth herein.

76.

By virtue of the foregoing, Defendants CDA and Adkins are in breach of the terms of the Collateral Assignment and the Note.

77.

As detailed herein, said Defendants have acted with intent, willful misconduct, malice, fraud, wantonness, or the entire want of care that would raise the presumption of conscious indifference to consequences by way of the manner and extent of their breach.

78.

Said Defendants' singular and collective conduct was intentional, malicious, and done with the intent to injure Plaintiff, or with such conscious indifference to the consequences to be deemed intentional pursuant to Georgia law.

79.

As a direct and proximate result of said Defendants' actions, Plaintiff has been damaged in an amount to be determined at trial by the enlightened conscience of an impartial jury.

**COUNT X - - ALL DEFENDANTS**
**BAD FAITH**

80.

Plaintiff incorporates and realleges Paragraphs 1 through 79 of this Complaint as though the same were fully set forth herein.

81.

Defendants CDA and Adkins' willful breach of the contractual obligations referenced hereinabove, as well as all Defendants' willful and intentional misconduct in attempting to convert Plaintiff's collateral vis-à-vis the fraudulent Policy surrender, and their related misconduct in misleading Plaintiff regarding the same is prima facie bad faith.

82.

Defendants are liable to Plaintiff for bad faith damages and penalties, as provided for under O.C.G.A. § 13-6-11, and Defendants are also liable to Plaintiff for all costs, expenses, and attorney's fees incurred in bringing this action.

**COUNT XI - - ALL DEFENDANTS**
**FRAUD IN THE FACTUM, FRAUD IN THE INDUCEMENT, AND**
**FRAUD, DECEIT, AND MISREPRESENTATION**

83.

Plaintiff incorporates and realleges Paragraphs 1 through 82 of this Complaint as though the same were fully set forth herein.

25

84.

Defendants, with the intent to defraud Plaintiff, represented to Plaintiff their request that Plaintiff delay a surrender of the Policy, ostensibly in order that Defendants CDA and Adkins could make provision for fulfilling their remaining obligations.

85.

Defendants expected that Plaintiff would reasonably rely on said misrepresentations, and Plaintiff did in fact rely upon said misrepresentations.

86.

At the time Defendants made said misrepresentations, they knew them to be false and they were, in fact, false.

87.

As a result of Defendants' misrepresentations, Plaintiff was defrauded in concluding that Defendants acknowledged the liability under the Note and the Collateral Assignment and delayed processing a surrender of the Policy as a concession to Defendants CDA and Adkins, and that Defendants were not otherwise communicating with the insurer regarding a fraudulent attempt to surrender and convert the Policy proceeds. But for Defendants' representations and communications under false pretenses, Plaintiff would not have otherwise agreed to the concession to delay the Policy surrender and would have immediately exercised its rights to foreclose on the same. As a consequence, Plaintiff has been damaged in an amount to be

determined at trial by the enlightened conscience of an impartial jury.

88.

Defendants, with intent to defraud Plaintiff, undertook to prepare and submit paperwork to AG seeking to surrender the Policy and convert the proceeds to Defendants' personal use and benefit.  During this time, Defendants engaged in multiple communications with Plaintiff, but at no time indicated that Defendants had submitted surrender paperwork to AG.

89.

Defendants expected that Plaintiff would reasonably rely on said misrepresentations, and Plaintiff did in fact rely upon said misrepresentations.

90.

At the time Defendants made said misrepresentations, they knew them to be false and they were, in fact, false.

91.

As a result of Defendants' and fraudulent misconduct in converting the Policy proceeds to their own use and benefit in derogation of the Note and the Collateral Assignment, Plaintiff has been damaged in an amount to be determined at trial by the enlightened conscience of an impartial jury.

**COUNT XII - - ALL DEFENDANTS**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AND**
**PROSPECTIVE BUSINESS RELATIONS**

92.

Plaintiff incorporates and realleges Paragraphs 1 through 91 of this Complaint as though the same were fully set forth herein.

93.

Defendants acted improperly and with the intent to injure Plaintiff and its business, including Plaintiff's business relations with the insurance carrier identified above, to wit: AG.

94.

Defendants' singular and collective actions were malicious and done with the intent to injure Plaintiff's business and Plaintiff's business relations, or were otherwise done with an entire want of care for the consequences.

95.

Defendants' acts and omissions in interfering with Plaintiff's business relations have damaged Plaintiff's business relationship with AG and others, and have damaged Plaintiff's prospective business relationship with that entity and its own lender as well as others in the financial services community.

96.

As a direct and proximate result of Defendants' willful acts and omissions, Plaintiff has been damaged in an amount to be determined at trial by the enlightened conscience of an impartial jury.

## COUNT XIII - - ALL DEFENDANTS
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

97.

Plaintiff incorporates and realleges Paragraphs 1 through 96 of this Complaint as though the same were fully set forth herein.

98.

Pursuant to the Collateral Assignment, Global One stands as the assignee of the Policy issued by AG.

99.

Defendants acted improperly, fraudulently, and without privilege to effectuate a surrender of the Policy without the knowledge and/or consent of Global One. Moreover, Defendants mislead AG in failing to disclose that Global One had not provided its consent to the fraudulent and improper Policy surrender.

100.

Defendants' singular and collective actions were malicious and done with the intent to injure Plaintiff.

101.

As a direct and proximate result of Defendants' interference with the Policy and the improper surrender of the same without the knowledge and consent of Plaintiff, Plaintiff has been damaged in an amount to be determined at trial by the enlightened conscience of an impartial jury.

**COUNT XIV - - ALL DEFENDANTS**
**PUNITIVE DAMAGES**

102.

Plaintiff incorporates and realleges paragraphs 1 through 101 of this Complaint as though the same were fully set forth herein.

103.

Defendants, and each of them, have acted with willful misconduct, malice, fraud, wantonness, or the entire want of care that would raise the presumption of conscious indifference to consequences.

104.

Plaintiff is entitled to recover punitive damages from Defendants in an amount to be determined at trial by the enlightened conscience of an impartial jury.

**COUNT XV - - ALL DEFENDANTS**
**IMPOSITION OF A CONSTRUCTIVE TRUST AND APPOINTMENT OF A RECEIVER**

105.

Plaintiff incorporates and realleges paragraphs 1 through 104 of this Complaint as though the same were fully set forth herein.

106.

Defendants CDA and/or Adkins, by actual or constructive fraud, unconscionable, willful or illegal misconduct, or negligent conduct, presently hold Accounts Receivable and other security in which Plaintiff has a perfected security

interest that said Defendants should not, in equity and good conscience, possess, retain or enjoy.

107.

By virtue of their singular and collective repeated and improper conduct and wrongful acts and omissions, Defendants, and each of them, are a constructive trustee for the benefit of Plaintiff over any money or property (including the Policy proceeds) Defendants have received, converted, retained, or appropriated and the proceeds thereof inuring to the benefit of Plaintiff.

108.

Plaintiff seeks an Order in equity placing the proceeds of Defendants' wrongdoing in a constructive trust in favor of Plaintiff.

109.

In addition, Plaintiff seeks the appointment of a receiver to take possession of, hold, and preserve any money or property Defendants have improperly appropriated or diverted from Plaintiff and the proceeds thereof.

110.

There is a present danger that Defendants will further deplete, divert, conceal or abscond with the money and property presently within their possession, custody or control and thereby exacerbate the damages and harm to Plaintiff. Accordingly, Plaintiff seeks an order, decree, and preliminary injunction, on such terms as this

Court may deem proper under the circumstances, freezing Defendants' singular and collective assets and prohibiting Defendants and all other persons acting in concert or participation with Defendants from transferring, encumbering, conveying, selling, concealing, pledging, hypothecating, assigning, spending, gifting or otherwise disposing of any money or property within their singular or collective possession, custody or control pending final resolution of Plaintiff's claims herein or further order of this Court.

WHEREFORE, Plaintiff Global One respectfully prays that process issue as the law provides and for the following relief:

    a.    Judgment against Defendants, jointly and severally, for Plaintiff's actual damages;

    b.    Judgment against Defendants, jointly and severally, for treble damages;

    c.    Judgment against Defendants, jointly and severally, for Plaintiff's costs of investigation and litigation, including reasonable attorney's fees;

    d.    Judgment against Defendants, jointly and severally, for punitive damages;

    e.    For an Order that Defendants be restrained from alienation or transfer of CDA's Accounts Receivable and proceeds thereof;

    f.    For an Order imposing a constructive trust placing the proceeds of Defendants' wrongdoing in such a constructive trust in favor of Plaintiff;

g.     For an Order appointing a receiver to take possession of, hold, and preserve any money or property Defendants have improperly appropriated or diverted from Plaintiff and the proceeds thereof;

h.     For an Order, Decree, and Preliminary Injunction on such terms as this Court may deem proper under the circumstances, freezing Defendants' singular and collective assets and prohibiting Defendants and all other persons acting in concert or participation with Defendants from transferring, encumbering, conveying, selling, concealing, pledging, hypothecating, assigning, spending, gifting or otherwise disposing of any money or property within their singular or collective possession, custody or control pending final resolution of Plaintiff's claims herein or further order of this Court;

i.     Judgment against Defendants, jointly and severally, for pre-judgment interest and post-judgment interest; and,

j.     For such other relief as the Court deems just and proper.


This 29th day of May, 2013.

Respectfully submitted,

MASON BAHR LLP


/s/ William D. Carter, Jr.
William D. Carter, Jr., Esq.
Georgia Bar No.: 114905

Attorneys for Plaintiff

Two Ravinia Drive
Suite 610
Atlanta, Georgia 30346
Telephone:  (770) 399-6450
Facsimile:  (770) 399-6471
wdcarter@masonlawfirm.net

**STATE OF GEORGIA**
**COUNTY OF DEKALB**

## VERIFICATION

Personally appeared before me, the undersigned attesting officer, duly authorized to administer oaths, **David E. Metzger, Managing Director of Global One Financial, Inc.,** and being duly sworn, deposes, and says that the foregoing facts contained within the Verified Complaint for Damages and Other Relief is true and correct to the best of my personal knowledge, information, and belief.

**For the Plaintiff:**

David E. Metzger
Managing Director, Global One
Financial, Inc.

Sworn and subscribed before me
this 21st day of May, 2013.



Notary Public